UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DIRAL HUGGINS,

                    Plaintiff,

        -v.-

COMMISSIONER DORA SCHRIRO &
WARDEN CARLTON NEWTON,

                  Defendants.
-------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:**
**DATE FILED:** 11/19/15

**REPORT AND
RECOMMENDATION**

14-CV-6468 (GBD) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable George B. Daniels, United States District Judge:**

      Plaintiff Diral Huggins, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983. He alleges that Defendants Dora B. Schriro, as the Commissioner of New York City's Department of Correction, and Carlton Newton, as the Warden of the Anna M. Kross Center ("AMKC") on Rikers Island, (collectively "Defendants"), violated his constitutional rights during the period of his detention at the AMKC. Defendants have moved to dismiss Huggins' Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the Court dismiss the Amended Complaint with prejudice.

# I. BACKGROUND

## A.   Factual Background

At the time of the alleged violations of his constitutional rights,[1] Huggins was incarcerated at the AMKC on Rikers Island.  *See* Amended Complaint ("Am. Compl."), at 2 (Dkt. No. 10).  Huggins alleges that Defendants deprived him of his constitutional rights under the Fifth, Seventh, Eighth, and Fourteenth Amendments.[2]  *Id.* at 3.

Specifically, Huggins contends that (1) the sneakers issued by the correctional facility were too thin and slippery, and this prevented him from participating in outdoor recreation during winter months; (2) during the same period, he was consistently served "cold or lukewarm" food; (3) the condition of his cell did not meet heating requirements and he was deprived of sufficient blankets; (4) such conditions—lack of exercise and exposure to cold—exacerbated his asthma and caused his health to decline generally; (5) visitation with his family was

---

[1] Huggins states that he was arrested on October 1, 2013, and that the alleged constitutional violations occurred "[t]hroughout the months of October 2013 up until April 2014," and "from September 2014 up until April 2015."  Am. Compl. at 2. Huggins also identifies "September 2015 up until November 2015" as a period of violation, *see id.*, but the Court will not consider this period as it occurs after the date of Huggins' Amended Complaint.

[2] While Huggins does not elaborate as to which claims he believes are protected by which amendments, the Court analyzes his claims under the First, Eighth, and Fourteenth Amendments.  Though the Court reads his Amended Complaint liberally, it does not identify any claims that could be construed as arising under the Fifth or Seventh Amendments.

limited; (6) his access to the law library was restricted; and (7) his usage of the telephone was limited. *Id.* at 3, 6.

## B. Procedural History

Huggins filed his Complaint on August 12, 2014, alleging various injuries resulting from the "locked down" periods during his incarceration at AMKC. (Dkt. No. 1). However, because Huggins did not specify how he was personally harmed by the lockdown, he was directed to amend his complaint. (Dkt. No. 5). On April 9, 2015, Huggins filed an Amended Complaint in which he asserted the claims identified above. On July 21, 2015, Defendants moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Huggins (1) failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e; (2) failed to sufficiently allege the personal involvement of Defendants in the purported violations of his constitutional rights; and (3) failed to state a claim upon which relief could be granted. Defendants' Motion to Dismiss ("Def. Mem.") (Dkt. No. 22). Huggins opposed this motion on September 29, 2015. Plaintiff's Opposition to Motion to Dismiss ("Pl. Mem.") (Dkt. No. 29).[3] Defendants replied in further support of their motion on October 8, 2015. Defendant's Reply Memorandum ("Def. Reply") (Dkt. No. 31). This motion is before me pursuant to the order of reference dated May 7, 2015. (Dkt. No. 14).

---

[3] Due to the non-consecutive pagination of this document, the Court's citations refer to the page as generated by the electronic docketing system.

3

## II. DISCUSSION

### A.   Standard of Review

On a Rule 12(b)(6) motion to dismiss, the Court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Nwozuzu v. United States*, No. 14-CV-8589 (LGS), 2015 WL 4865772, at * 3 (S.D.N.Y. Aug. 12, 2015) ("On a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the non-moving party.")   However, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

While *pro se* complaints must also contain sufficient factual allegations to meet the plausibility standard, *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013), district courts should look proactively for such content by reading *pro se* complaints with "special solicitude" and interpreting them to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam) (internal quotation omitted).  Even so, a district court should still dismiss a *pro se* complaint if it "fail[s] to meet minimum pleading

4

requirements." *Kinsey v. Bloomberg,* No. 12-CV-8936 (PAE) (JCF), 2014 WL 630670, at \*3 (S.D.N.Y. Feb. 18, 2014).

## B.   Exhaustion of Administrative Remedies

As a threshold matter, the PLRA prohibits a prisoner from bringing Section 1983 claims "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[C]ourts 'should be careful to look at the applicable set of grievance procedures'" within a prisoner's correctional facility at the time the grievance arose to determine the availability of administrative remedies. *Taylor v. New York State Dep't of Corr.,* No. 03-CV-1929 (PKC), 2004 WL 2979910, at \*6 (S.D.N.Y. Dec. 22, 2004) (quoting *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir. 2004)).

Here, the applicable administrative procedure is the Inmate Grievance and Request Program ("IGRP"), a four-step administrative review and appeals system for prisoner grievances within the New York City Department of Correction.[4]  The

---

[4] The IGRP requires prisoners to: (1) file a complaint with the IGRP for informal resolution within ten days of the alleged violation; (2) if unsatisfied with the disposition or a disposition has not been reached in a timely manner, request a hearing with the Inmate Grievance Resolution Committee ("IGRC") within five days of the disposition; (3) appeal to the commanding officer of the facility, who must render a decision within five working days; and (4) if the inmate is still unsatisfied with the disposition, appeal to the DOC Central Office Review Committee ("CORC"), which must issue a recommendation within 15 working days. *See* N.Y.C. Dep't of Corr., Directive: Inmate Grievance and Request Program, No. 3376 (effective date Sept. 12, 2012), http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Req uest_Program.pdf (last visited November 18, 2015); *see also Williams v. Ramos,* No. 13-CV-826 (VB), 2015 WL 864888, at \*2 (S.D.N.Y. Feb. 9, 2015).

PLRA "requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Hernandez v. Coffey,* 582 F.3d 303, 305 (2d Cir. 2009) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006) (emphasis in original)).

The Supreme Court has clarified, however, that prisoners "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock,* 549 U.S. 199, 216 (2007). It cautioned that courts should not impose a heightened pleading requirement that does not exist in the PLRA, particularly because "when Congress meant to depart from the usual procedural requirements, it did so expressly." *Id.* at 216. Rather, failure to exhaust administrative remedies is an affirmative defense that defendants must raise. *Id.*

Although a motion for summary judgment is normally the proper vehicle to address a plaintiff's failure to exhaust, "'[a]n affirmative defense may be raised by a [Rule 12(b)(6) motion to dismiss], without resort to summary judgment procedure, if the defense appears on the face of the complaint.'" *Rodriguez v. Warden, Metropolitan Corr. Fac.,* No. 13-CV-3643 (PAC) (SN), 2015 WL 857817, at *8 (S.D.N.Y. Feb. 27, 2015) (quoting *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998)). Because prisoners are not required to plead compliance with prison grievance procedures in their complaints, courts in this Circuit have denied motions to dismiss based on exhaustion where ambiguity exists as to whether a plaintiff exhausted his administrative remedies. Where a prisoner indicates that he has taken *some* steps toward exhaustion, district courts will

6

normally not infer from his silence that he failed to take the remaining steps that full exhaustion would require. *See, e.g., Rodriguez,* 2015 WL 857817 at \*3-4; *Randolph v. N.Y.C. Dep't of Corr.,* No. 05-CV-8820 (GEL) (MHD), 2007 WL 2660282, at \*8 (S.D.N.Y. Sept. 7, 2007) ("[Plaintiff's] failure to mention some of the required steps cannot be deemed to establish a failure to exhaust; rather, it simply leaves ambiguity as to the extent of his exhaustion efforts."), *adopted by* Order dated Sept. 22, 2007 (Dkt. No. 45).

Accordingly, "a *pro se* plaintiff's pleading references to various efforts that he has made to bring alleged prison violations to the attention of the prison authorities cannot be treated as tantamount to an admission that he had not exhausted his remedies." *Wesley v. Muhammad,* No. 05-CV-5833 (GEL) (MHD), 2008 WL 123812, at \*3 (S.D.N.Y. Jan. 10, 2008), *adopted by* 2008 WL 236974 (S.D.N.Y. Jan. 28, 2008). *But see Ghee v. Warden Ramos,* No. 13-CV-632 (RWS), 2013 WL 7018543, at \*1-2 (S.D.N.Y. Dec. 4, 2013) (dismissing prisoner's complaint for failure to exhaust where he did not respond to question regarding appeal efforts and failed to allege "further actions taken . . . to appeal his initial grievance or comply with the remaining requirements under the IGRP"); *Antrobus v. Warden of GRVC,* No. 11-CV-5128 (JMF), 2012 WL 1900542, at \*3 (S.D.N.Y. May 25, 2012) (treating prisoner's nonresponsive answer regarding his appeal efforts as "a concession that he did not attempt to appeal the decision at all").

Here, Huggins alleges in his Amended Complaint that he received "no answer" to his initial grievance. Further, in response to the inquiry asking him to

7

describe "all efforts to appeal to the highest level of the grievance process," Huggins writes that "[t]here was no decision unless no answer is a decision." Am. Compl. at 4. While this response does not suggest that Huggins has taken all steps in the administrative process, it is also not a concession that he has failed to take these steps. "It is therefore only clear from [Plaintiff]'s allegations that he initiated the IGRP grievance process and that, at the time of filing his complaint, he had not received a response." *Groenow v. Williams*, No. 13-CV-3961 (PAC) (JLC), 2014 WL 941276, at *4 (S.D.N.Y. Mar. 11, 2014), *adopted by* Order dated July 15, 2014 (Dkt. No. 21); *see Randolph*, 2007 WL 2660282 at *7 (declining to dismiss complaint where prisoner alleged that he filed grievance and received no response because "at no point does [prisoner] state that he failed to follow all the required grievance procedures"). Although "[t]he complaint may lack specifics as to how the plaintiff grieved his claim, that is not a valid basis for dismissal under *Jones [v. Bock]*." *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't,* No. 10-CV-6309 (JGK), 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011) (declining to dismiss prisoner's complaint where he alleged only that he had "filed a complaint within the office of the warden").

Accordingly, given the ambiguous answers provided in the Amended Complaint as well as the lack of any other information from Defendants regarding Huggins' exhaustion of the grievance process, the Court concludes that failure to exhaust the administrative process does not constitute a basis for dismissal at this time.

## C.   The Requirement of Personal Involvement

To establish a defendant's individual liability pursuant to Section 1983, a plaintiff must plead each defendant's personal involvement in the alleged constitutional violations. *See, e.g., Liner v. Fischer,* No. 11-CV-6711 (PAC) (JLC), 2013 WL 3168660, at *7 (S.D.N.Y. June 24, 2013) (citing *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) and *Iqbal,* 556 U.S. at 676), *adopted by* 2013 WL 4405539 (S.D.N.Y. Aug. 7, 2013); *see also Grullon v. City of New Haven,* 720 F.3d 133, 138-39 (2d Cir. 2013). This requirement can be satisfied by demonstrating that the defendant: (1) participated directly in the alleged constitutional violation; (2) failed to remedy a wrong after learning of it; (3) created a policy or custom under which the violation occurred, or allowed such a policy or custom to continue; (4) was grossly negligent in supervising subordinates who committed the alleged violation; or (5) was deliberately indifferent to ongoing unconstitutional acts. *Id.* at 138-39 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)); *see Liner,* 2013 WL 3168660 at *7.

### 1.   Receipt of a grievance is insufficient to establish personal involvement

Other than in the caption (and in the section of the form complaint where the plaintiff is asked to list the defendants), Huggins does not mention either Defendant by name in the Amended Complaint. Huggins refers to Defendant Newton for the first time in his Opposition to the Motion to Dismiss, alleging that he is personally liable because he "failed to remedy the wrong" after "being informed of the violation through a report or appeal." Pl. Mem. at 8. The only basis Huggins

9

has for Newton knowing of this "wrong" comes from his review of "grievances at the highest level in the facility." *Id.*

However, courts "have repeatedly held that receipt of letters or grievances is insufficient to impute personal involvement. Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison officials could name the supervisor as a defendant since the plaintiff must pursue his prison remedies, and invariably the plaintiff's grievance will have been passed upon by the supervisor." *Acevedo v. Fischer*, No. 12-CV-6866 (RA), 2014 WL 5015470, at *16 (S.D.N.Y. Sept. 29, 2014) (citing *Harris v. Fischer,* No. 11-CV-6260 (CM) (JLC), 2014 WL 3859242, at *3 (S.D.N.Y. Aug. 1, 2014)); *see also Ramrattan v. Fischer,* No. 13-CV-6890 (KPF), 2015 WL 3604242, at *11 (S.D.N.Y. June 9, 2015) (providing the names and titles of defendants, claiming that they are in the chain-of-command in the prison hierarchy, and that these individuals receive and review letters and grievances is insufficient to allege personal involvement); *Ciaprazi v. Fischer*, No. 13-CV-4967 (VEC) (FM), 2015 WL 1315676, at *2-3 (S.D.N.Y. Mar. 24, 2015) (Defendant Commissioner's receipt of letter and his brief response did not prove he was "aware" of alleged constitutional violations).

As to Commissioner Schriro, Huggins does not specify the nature or extent of Schriro's involvement at all. In fact, neither the Amended Complaint nor his Opposition to the Motion to Dismiss even mentions Commissioner Schriro. *See Harris*, 2014 WL 3859242 at *3 (dismissing claims against defendants where they

are named in the caption, but are not otherwise mentioned in the complaint) (citing *Dove v. Fordham University,* 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)).

### 2.    *Monell* Liability

Alternatively, Huggins alleges that Defendants "created [a] policy or custom" that resulted in the violation of his constitutional rights. Pl. Mem. at 16. Pursuant to *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658 (1978), "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell,* 436 U.S. at 690-91).

However, Huggins' *Monell* claim fails in a critical respect. As the Court discusses below, Huggins fails to plead a constitutional violation by an individual Defendant. Without an underlying violation, there can be no *Monell* liability. *See, e.g., Jones v. City of New York*, No. 14-CV-0826 (CBA) (RLM), 2015 WL 502227, at *9 (E.D.N.Y. Feb. 4, 2015) ("Plaintiff's failure to plead adequately a constitutional violation by an individual defendant renders her *Monell* claims moot.").

For all these reasons, the Court concludes that Huggins has failed to allege the personal involvement of the two named Defendants. This is fatal to the viability of his Amended Complaint.

11

## D.   Conditions of Confinement Claims

Though the Court recommends dismissal of Huggins' claims for failing to allege the personal involvement of the named Defendants, even if he had, his allegations fail to state a cognizable claim.

Huggins argues that his conditions of confinement amounted to a violation of the Eighth Amendment's protections against cruel and unusual punishment.[5] To establish such a violation, an inmate must satisfy both "a subjective component, which focuses on the defendant's motive for his conduct, and an objective component, which focuses on the conduct's effect." *Edwards v. Horn*, No. 10-CV-6194 (RJS) (JLC), 2012 WL 760172, at *11 (S.D.N.Y. Mar. 8, 2012) (citing *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir. 2009)); *see Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have acted with a "sufficiently culpable state of mind," and objectively the "alleged deprivation must be sufficiently serious . . . that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* at 553 (internal citation and quotation omitted). Therefore, "[u]nder the 'deliberate indifference' standard, prison officials violate the Eighth Amendment only if they know of and disregard an excessive risk to inmate

---

[5] Because Huggins was a pre-trial detainee when the alleged violations occurred, *see* Pl. Mem. at 9, his conditions of confinement claims are presumed to have been brought under the Fourteenth Amendment. However, the deliberate indifference analysis under the Fourteenth and Eighth Amendments are identical. *See Cano v. City of New York*, No. 13-CV-3341 (WFK) (VVP), 2015 WL 4865993, at *3 (E.D.N.Y. Aug. 13, 2015) ("[T]he analysis is the same under the Fourteenth and Eighth Amendments.") (citing *Caiozzo v. Koreman,* 581 F.3d 63, 72 (2d Cir. 2009)).

health and safety and do not reasonably respond to that risk."[6] *Gamble v. City of New York ex rel. NYC Dep't of Corr.*, No. 04-CV-10203 (TPG), 2009 WL 3097239, at *4 (S.D.N.Y. Sept. 25, 2009) (citing *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (internal quotations omitted)).

    1.   Subjective Element

As to Defendant Newton's subjective state of mind, Huggins suggests that he was on notice, and thus had actual knowledge of the constitutional violations, because the warden "reviews grievances at the highest level in the facility." Pl. Mem. at 8. For the same reasons that receipt of grievances or letters fails to establish personal involvement, it is insufficient to satisfy the deliberate indifference standard for a conditions of confinement claim. *See, e.g., Rivera v. Bloomberg*, No. 11-CV-4325 (PGG), 2012 WL 3655830, at *6 (S.D.N.Y. Aug. 27, 2012) ("[A] prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official exhibited deliberate indifference by failing to act on information indicating that the violation was occurring.") (internal quotation omitted). As to Defendant Schriro, as previously noted, Huggins never mentions her in his pleadings or motion papers, thus

---

[6] "To meet the subjective element, the inmate must show that the defendant acted with more than mere negligence." *Corley v. City of New York*, No. 14-CV-3202 (GHW), 2015 WL 5729985, at *10 (S.D.N.Y. Sept. 30, 2015) (internal quotation omitted).

providing no basis for the Court to evaluate her state of mind. Therefore, Huggins' allegations do not satisfy the subjective element as to either Defendant.

## 2. Objective Element

Even if Huggins could demonstrate that Defendants acted with a culpable state of mind, his allegations nonetheless fail to rise to the level of an Eighth Amendment violation because they do not amount to an "unquestioned and serious [deprivation] of basic human needs or a denial of the minimal civilized measure of life's necessities." *Williams v. Carbello*, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) (internal quotations and citations omitted). *See Wilson v. Seiter,* 501 U.S. 294, 298 (1991) ("The Constitution . . . does not mandate comfortable prisons and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.") (internal quotation omitted); *Phelps v. Kapnolas,* 308 F.3d 180, 185 (2d Cir. 2002) (same).

Huggins alleges that (1) the sneakers issued by the correctional facility are too thin and slippery,[7] and that this prevented him from participating in outdoor recreation during winter months; (2) during the same period, he was consistently

---

[7] Courts in this Circuit have "consistently found that pain and other problems resulting from being forced to wear institutional footwear are not 'sufficiently serious' to satisfy the objective prong of the deliberate indifference standard." *Simmons v. Cripps,* No. 12-CV-1061 (PAC) (DCF), 2013 WL 1290268, at *16 (S.D.N.Y. Feb. 15, 2013) (citations omitted), *adopted by* 2013 WL 1285417 (S.D.N.Y. Mar. 28, 2013). Here, rather than alleging that the shoes at issue caused him to suffer serious physical injury, Huggins alleges that the shoes prevented him from participating in any outdoor recreation, which led to worsening of his asthma and a general decline of his health.

served "cold or lukewarm" food; (3) the condition of his cell did not meet heating requirements and he was deprived of sufficient blankets; and (4) his visitation privileges were improperly limited. *See* Am. Compl. at 2. As the Court details below, Huggins' claims do not rise to the level of an Eighth Amendment violation.

    a. <u>Inability to Exercise</u>

"While courts have found that denial of all opportunity to exercise violates an inmate's constitutional rights, they have found no violation where the inmate has an opportunity for exercise, either in or outside of his cell," *Shakur v. Sieminski,* No. 07-CV-1239 (CFD), 2009 WL 2151174, at *4 (D. Conn. July 15, 2009) (citing *Williams v. Greifinger,* 97 F.3d 699, 704 (2d Cir. 1996)), and that "[s]poradic infringement of the right to exercise does not rise to the level of a constitutional deprivation." *Gamble,* 2009 WL 3097239 at *5 (citations omitted).

Here, Huggins does not claim that he was denied the right to exercise. Instead, he alleges that his shoes made it uncomfortable to exercise during cold weather, and that he could not exercise in his cell because it was too small. *See* Am. Compl. at 2-3; Pl. Mem. at 5. However, Huggins does not have a right to outdoor exercise. Therefore, even if the lack of adequate footwear did prevent him from going outside, this does not rise to the level of a constitutional violation. *See Shakur,* 2009 WL 2151174, at *4. Additionally, Huggins does not set forth sufficient facts for the Court to draw a reasonable inference that he could not exercise in his cell. For example, there is no indication that his cell was any smaller than that of other inmates or that there were special circumstances peculiar to him

15

that required more space for exercise. Further, he does not allege how often he was unable to exercise outdoors due to inclement weather. *See Gamble*, 2009 WL 3097239 at *5 (inability to exercise during inclement weather only seven times during a 21-month period did not amount to a constitutional violation).

Therefore, the Court concludes that Huggins fails to state a claim that the limitations on his ability to exercise rise to the level of a constitutional violation.

### b. Cold or Lukewarm Food

The Constitution requires prisoners be served "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Williams v. Ramos*, No. 13-CV-826 (VB), 2013 WL 7017674, at *6 (S.D.N.Y. Dec. 23, 2013) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). Huggins does not allege that the food served was nutritionally inadequate, but only that it was cold or lukewarm, which does not amount to a constitutional violation. *See, e.g., Fisher v. Dep't of Corr.*, No. 92-CV-6037 (LAP), 1995 WL 608379, at *5 (S.D.N.Y. Oct. 16, 1995) (food sometimes served cold does not rise to the level of constitutional violation). Accordingly, the Court recommends that this claim be dismissed.

### c. Heating and Blanket

While it is "well settled that exposing prisoners to extreme temperatures . . . may violate the Eighth Amendment," *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013), Huggins does not claim that his cell was without heat, exposing him to unreasonable temperatures for an extended period, or that he was not issued a

blanket during this period.  *See Wilson,* 501 U.S. at 304 (stating that a "low cell temperature at night combined with a failure to issue blankets" might violate the Eighth Amendment); *see also Corselli v. Coughlin,* 842 F.2d 23, 27 (2d Cir. 1988) (subfreezing temperatures for three months with ice forming in toilet were sufficient to raise issues of fact for jury, even where prison officials gave inmate extra blanket).

Here, Huggins only claims that "the cell did not conform to the heating requirements" and that inconsistency of heating "required more than . . . one blanket." Am. Compl. at 3.  There is no indication that his cell was exposed to exceptionally cold temperatures for an extended period of time.  Further, Huggins admits he was issued the standard blanket, but objects to the failure to provide additional ones.  *Id.*  Accordingly, the Court concludes that Huggins does not allege sufficient facts for the Court to draw the inference that his cell was cold enough to rise to the level of a constitutional violation.[8]

### d. Worsening of Asthma and General Health

While each of the above alleged deprivations, on its own, does not amount to an Eighth Amendment violation, Huggins further suggests that the conditions, in

---

[8] In his Opposition to the Motion to Dismiss, Huggins claims that the "heating condition of the [c]ell was nonfunctioning" and "the cell heating system and/or housing unit did not work properly." Pl. Mem. at 5.  Without any additional factual context, the Court interprets this phrasing to be a restatement of his claim in the Amended Complaint.  There is nothing in the Opposition to the Motion to Dismiss to indicate that the heating system not working properly resulted in sufficiently cold temperatures for an extended period of time to rise to the level of a constitutional violation.

17

combination, as applied to him who has asthma, amount to a constitutional

violation. However, "[b]eing an asthmatic (a person susceptible to asthma attacks)

is not a condition, in Eighth Amendment parlance, that is severe or 'sufficiently

serious'" to underlie a constitutional violation. *Patterson v. Lilley*, No. 02-CV-6056

(NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003). *See Youngblood v.*

*Artus*, No. 10-CV-00752 (MAD) (DRH), 2011 WL 6337774, at *7 (N.D.N.Y. Dec. 19,

2011) ("Plaintiff's asthma condition itself does not qualify as a serious medical need

for the purposes of a section 1983 claim."); *Sulkowska v. City of New York*, 129 F.

Supp. 2d 274, 292 (S.D.N.Y. 2001) (failure to provide asthma medication insufficient

to state cause of action). Therefore, even assuming all of the alleged conditions

have collectively worsened his asthma, the alleged deprivation does not state a

viable Eighth Amendment claim.

      e.    Visitation Privileges

Huggins also claims that "visits with [his] wife and family were

cancelled/shortened." Pl. Mem. at 5; *see also* Am. Compl. at 3. However, "[t]he

denial of prison access to a particular visitor 'is well within the terms of

confinement ordinarily contemplated by a prison sentence' and therefore is not

independently protected by the Due Process Clause." *Kentucky Dep't of Corr. v.*

*Thompson*, 490 U.S. 454, 461 (1989) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468

(1983)).

Huggins has "failed to demonstrate that his claim about deprivation of

visitation with family during his time [while incarcerated] objectively denied him

18

the minimal civilized measures of life's necessities." *Delgado v. Dembar*, No. 13-CV-191 (KBF), 2014 WL 4792068, at \*4 (S.D.N.Y. Sept. 24, 2014) (internal quotation omitted); *see Hernandez v. Lindsay*, No. 08-CV-1495 (SJF), 2011 WL 3163078, at \*6 (E.D.N.Y. July 22, 2011) ("[L]oss of . . . visitation privileges for ten (10) months [is] not objectively serious."). In fact, Huggins indicates that his visitations were affected due to "incidents" in the prison, which only further supports his failure to state a claim. *See* Pl. Mem. at 5. "[T]he Court is required to grant 'wide-ranging deference' to prison administrators 'in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"[9] *Marrero v. Weir*, No. 13-CV-0028 (RNC), 2014 WL 4799228, at \*6 (D. Conn. Sept. 26, 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Accordingly, the Court recommends dismissal of this claim.

## E.   Law Library and Telephone Usage

In addition to his conditions of confinement claims, Huggins alleges two other constitutional violations, both arising under the First Amendment, which the Court addresses below.

---

[9] Though Huggins alleges that these "lockdowns" preventing his visits resulted from incidents that "did not [a]ffect the entire jail or its security," the Court must grant wide deference to a prison administrator's determination that an incident in one area of the jail necessitates lockdown measures be taken in another area as well. Am. Compl. at 3.

19

1.   Law Library

The Supreme Court has recognized that an inmate does not have "an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  Rather, a prison facility must ensure that its inmates have "'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)).[10]  Additionally, for a defendant's conduct to violate an inmate's right of access to the courts, it must cause "actual injury" or "materially prejudice[ ]" the inmate.  *Salvatierra v. Connolly,* No. 09-CV-3722 (SHS) (DF), 2010 WL 5480756, at *21 (S.D.N.Y. Sept. 1, 2010) (internal citation and quotation omitted), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011).

Therefore, it is insufficient to merely state, without further elaboration, that he was "[f]requently [ ] denied [access to law library], [a]ffecting right to Court."  Pl. Mem. at 5; *see also* Am. Compl. at 3.  Because Huggins does not state any facts to imply he suffered injury or prejudice, this claim should be dismissed.

2.   Telephone Calls

Lastly, Huggins makes a passing reference that he was denied "phone[] usage."[11]  *Id.* at 6.  However, "[p]hone restrictions do not impinge on a prisoner's

---

[10] A claim alleging lack of access to the courts arises under the First Amendment. *See, e.g., Martinez v. Healey,* No. 14-CV-302 (NSR), 2014 WL 5090056, at *2 (S.D.N.Y. Oct. 10, 2014).

[11] "'A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection.'" *Banks v. Argo,* No. 11-CV-

constitutional rights where an inmate has alternate means of communicating with the outside world." *Henry v. Davis,* No. 10-CV-7575 (PAC) (JLC), 2011 WL 3295986, at *2 (S.D.N.Y. Aug. 1, 2011) (collecting cases), *adopted by* 2011 WL 5006831 (S.D.N.Y. Oct. 20, 2011).  Because inmates "have no right to unlimited telephone calls," *Bellamy v. McMickens,* 692 F. Supp. 205, 214 (S.D.N.Y. 1998) (citation omitted), a constitutional violation only exists if the inmate was stripped of alternate methods of communication. *See, e.g., Paulino v. Menifee,* No. 00-CV-5719 (RCC) (KNF), 2001 WL 243207, at *2 (S.D.N.Y. Mar. 9, 2001) (refusing to issue injunction restoring phone privileges where inmate did not allege that alternate means of communication were inadequate).

Here, Huggins does not allege that he was deprived of alternative methods of communication.  Accordingly, Huggins has failed to demonstrate that restrictions on his telephone usage deprived him of a constitutional right.  Therefore, the Court recommends dismissal of this claim.

**F.    Leave to Amend**

The Court would ordinarily recommend that a *pro se* plaintiff be given leave to amend his complaint to replead all factually insufficient claims. *See, e.g.*, *JCG v. Ercole*, No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at *34-35 (S.D.N.Y. Apr. 24, 2014), *adopted by* No. 11-CV-6844 (CM) (JLC), 2014 WL 2769120 (S.D.N.Y. June 18, 2014) (citing *Grullon,* 720 F.3d at 139) (district court generally should not dismiss

---

4222 (LAP), 2012 WL 4471585, at *5 (S.D.N.Y. Sept. 25 2012) (quoting *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975)).

*pro se* complaint without granting at least one opportunity to replead factually insufficient claims). Here, however, Huggins has already had the opportunity to amend his complaint once. *See* Dkt. Nos. 5, 10. Additionally, the Court has liberally construed Huggins' Opposition to the Motion to Dismiss in such a way that it effectively amounts to another pleading. *See Lang v. New York City Health and Hosps. Corp.,* No. 12-CV-5523 (WHP), 2013 WL 4774751, at *4 (S.D.N.Y. Sept. 5, 2013) ("[C]ourts have construed allegations in *pro se* oppositions as motions to amend in view of the duty to construe *pro se* filings liberally.") (citing *Santiago v. Pressley,* No. 10-CV-4797 (PAE), 2011 WL 6748386, at *5 (S.D.N.Y. Dec. 23, 2011)). Accordingly, because Huggins has now had two opportunities to amend his complaint and any further attempt would be futile for the various reasons set forth in this Report, he should not be granted leave to further amend his Complaint. *See, e.g., Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Best v. City of New York*, No. 12-CV-7874 (RJS) (SN), 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford [Plaintiff] so many bites at the apple.").

## III. CONCLUSION

For the foregoing reasons, I recommend that the Court dismiss the Amended Complaint with prejudice.

22

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 19, 2015
      New York, New York

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation**
**has been mailed to:**
Diral Huggins
DIN #15A0064
Auburn Corr. Facility
P.O. Box 618
Auburn, NY 13024

23